**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| GEORGE BOGHOS HAJJAR, | ) | No.  CV 08-7468-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

    Plaintiff filed this action on November 14, 2008, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on November 17, 2008, and January 22, 2009.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 4, 2009, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on April 20, 1957. [Administrative Record ("AR") at 40-41, 71, 77.] He has a tenth grade education from Lebanon, and has past relevant work experience as a salesperson and telemarketer selling shoes and lingerie. [AR at 23-24, 27-28, 82, 84, 88-90.]

On August, 24, 2006, plaintiff protectively filed his application for Supplemental Security Income payments, alleging that he has been unable to work since August 24, 2006, due to a "[t]hroat problem[,] possible cancer," and fatigue. [AR at 71-74, 77, 80-85.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 44-47, 49-55.] A hearing was held on January 30, 2008, at which time plaintiff appeared with counsel and testified on his own behalf. [AR at 12, 21-39.] A vocational expert also testified. [AR at 30-37.] On February 29, 2008, the ALJ issued an unfavorable decision. [AR at 9-20.] Plaintiff requested review of the hearing decision. [AR at 7.] When the Appeals Council denied plaintiff's request for review on September 26, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 1-4.] This action followed.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

2

Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.


**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.


**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

1    past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

2    case of disability is established. The Commissioner then bears the burden of establishing that the

3    claimant is not disabled, because he can perform other substantial gainful work available in the

4    national economy. The determination of this issue comprises the fifth and final step in the

5    sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

6    at 1257.

7

8    **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

9            In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

10   gainful activity since August 24, 2006, the date of the application. [AR at 14.] At step two, the ALJ

11   concluded that plaintiff has the "severe" impairment of "status post carcinoma/malignant neoplasm

12   of the larynx with residual hoarseness." [Id.] At step three, the ALJ determined that plaintiff's

13   impairment does not meet or equal any of the impairments in the Listing. [AR at 15.] The ALJ

14   further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform medium

15   exertional level work[2] that does not require plaintiff to speak "for more than a few minutes at a

16   time." [AR at 15-17.] At step four, the ALJ determined that plaintiff was not capable of performing

17   his past relevant work. [AR at 18.] At step five, the ALJ found, considering plaintiff's age,

18   education, work experience and RFC, that there is a significant number of jobs in the national

19   economy that plaintiff is capable of performing. [AR at 19-20.] Accordingly, the ALJ determined

20   that plaintiff was not disabled since August 24, 2006. [AR at 20.]

21   /

22   /

23   /

24

---

25       [1]   RFC is what a claimant can still do despite existing exertional and nonexertional
26   limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

27       [2]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with
     frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c),
28   416.967(c).

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly evaluate whether plaintiff's impairment meets the Listing; and (2) failed to make proper credibility findings. [Joint Stipulation ("JS") at 3-4, 8-12, 15.] As set forth below, the Court agrees with plaintiff, and remands the matter for further proceedings.

### A.    THE EVIDENCE

In June of 2005, plaintiff underwent a partial laryngectomy for spindle cell carcinoma of the vocal cord. [AR at 24, 28, 127, 130-31, 141, 144, 147.] After his surgery, plaintiff underwent approximately eight months of radiation and chemotherapy. [AR at 24, 28, 141.] Plaintiff explained at the hearing that since his cancer treatment, he has difficulty speaking and is only able to speak for three or four minutes at a time before becoming too hoarse. [AR at 24-25, 28-30, 81.] While examining plaintiff, the ALJ made it a point to ask questions that would not require plaintiff "to give as much of a response to make it a little bit easier for [him.]" [AR at 27.] Since his cancer treatment, plaintiff is also frequently fatigued. [AR at 24-25, 28-29, 81, 86.] Plaintiff explained that he has difficulty sleeping, and that his prescription sleep aid, Ambien, has not helped much as he still only gets about two hours of sleep each night. [AR at 29.] As a result, plaintiff stated that he is very tired and takes naps during the day. [AR at 29, 86-87.] Plaintiff also explained that he is frequently short of breath, and that it becomes worse when he stands or walks for prolonged periods. [AR at 29-30, 86-87.] Plaintiff stated that he can only walk or stand for ten minutes, and if he does, he has to lie or sit down afterwards. [Id.]

Plaintiff's limitations were supported by the findings of Dr. Raffi Mesrobian and Dr. Ebrahim Hakimian, plaintiff's treating physicians. Dr. Mesrobian reported that plaintiff "complains of hoarseness and dysphagea," that plaintiff experiences "shortness of breath upon exertion," and that "[h]e is unable to carry on a conversation because he becomes almost aphonic after [a] few sentences." [AR at 147.] Dr. Mesrobian explained that an examination of plaintiff showed that "[t]he inlet of [plaintiff's] larynx was somewhat narrower," and that plaintiff "does get hoarse and

1  loses his voice almost totally after few sentences." [AR at 147.] Dr. Mesrobian also reported that

2  due to plaintiff's surgery, his "airway is narrower than normal," and that "[t]his makes it so he gets

3  short of breath easily." [AR at 179.] He further found that plaintiff is "unable to walk short

4  distances or climb stairs," or "carry any heavy objects," and that he tires easily and frequently

5  needs to rest. [Id.] Dr. Mesrobian's examination notes also indicate that plaintiff's left vocal cord

6  is paralyzed and that plaintiff repeatedly sought treatment for hoarseness. [AR at 180-81.] Dr.

7  Hakimian's records indicate that he diagnosed plaintiff with insomnia, and that he prescribed

8  Ambien. [AR at 170, 183-85.]

9      The consultative medical examiner, Dr. Sean To, found that plaintiff was of average

10  reliability. [AR at 141.] According to Dr. To's examination, plaintiff "did have a very hoarse voice[,]

11  [h]e spoke very softly," and he "complain[ed] that he is very fatigued and tired." [AR at 144.] Dr.

12  To also recognized that plaintiff underwent a laryngectomy on June 24, 2005, due to spindle cell

13  carcinoma of the larynx, and that plaintiff reported that he lost his voice completely for eight

14  months. [AR at 141, 144.] Nonetheless, Dr. To concluded that plaintiff had no environmental

15  limitations or restrictions in his ability to push, pull, lift, carry, stand, walk, sit, use his hands, or

16  engage in activities requiring agility or postural movements. [AR at 144.] Dr. N.J. Rubaum, a

17  medical consultant, reviewed the medical records on November 15, 2006, and affirmed Dr. To's

18  assessment regarding plaintiff's lack of limitations. [AR at 150-57.] Dr. Rubaum additionally found

19  that plaintiff was capable of lifting 50 pounds occasionally and 25 pounds frequently, and that he

20  was able, with normal breaks during an eight-hour workday, to stand and walk for a total of six

21  hours and sit for a total of six hours. [AR at 153.]

22

23  **B.     LISTED IMPAIRMENT**

24      Plaintiff contends that the ALJ applied an improper legal standard when considering

25  whether his speech impairment qualifies him for a finding of disability under section 2.09 of the

26  Listing. 20 C.F.R., Part 404, Subpt. P, App. 1. Listing 2.09 requires a finding of disability for an

27  individual with "loss of speech due to any cause, with inability to produce by any means speech

28  that can be heard, understood, or sustained." 20 C.F.R., Part 404, Subpt. P, App. 1, § 2.09.

Social Security Ruling[3] 82-57 provides an explanation regarding "how loss of speech is to be evaluated" by the ALJ when assessing disability.  SSR 82-57.  The policy statement explains:

> Ordinarily, when an individual's impairment prevents effective speech, the loss of function is sufficiently severe so that an allowance under Listing 2.09 is justified on the basis of medical considerations alone, unless such a finding is rebutted by work activity.  To speak effectively, an individual must be able to produce speech that can be heard, understood, and sustained well enough to permit useful communication in social and vocational settings.  These criteria are applicable to the production of speech whether by natural function of the voice mechanism or by the use of a prosthetic device.
>
> Three attributes of speech pertinent to the evaluation of speech proficiency are: (1) audibility -- the ability to speak at a level sufficient to be heard; (2) intelligibility -- the ability to articulate and to link the phonetic units of speech with sufficient accuracy to be understood; and (3) functional efficiency -- the ability to produce and sustain a serviceably fast rate of speech output over a useful period of time.  When at least *one* of these attributes is missing, overall speech function is not considered effective.

SSR 82-57.

To meet or equal a listing, a claimant must establish that he meets each characteristic of a listed impairment.  20 C.F.R. §§ 404.1520(d), 416.920(d); see also Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir 1999).  The ALJ's opinion acknowledged that the medical records demonstrated plaintiff's speech-related impairment, including that he "has been experiencing difficulties with speech communications due to residual hoarseness," and that plaintiff "lacks the ability to engage[] in prolonged speech or speak for more than a few minutes at a time." [AR at 15, 17, 144, 147-49, 153.]  Nonetheless, the ALJ found that plaintiff's condition failed to meet Listing 2.09. [AR at 15.]  The ALJ determined that plaintiff's speech "condition does not meet medical listing 2.09" because plaintiff did not present a "loss of speech or complete inability to speak," and the section only "applies to individuals who experience 'loss of speech,' not just difficulties with speech communications." [Id.]  During the hearing, the ALJ also interpreted Listing 2.09 as requiring a complete inability to speak.  [AR at 25, 38-39.]  Specifically, the ALJ

---

[3]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

commented that plaintiff "doesn't meet 2.09 because it says loss of speech with inability to produce by any means speech.  So that, that's not appropriate, but I do understand he has hoarseness issues and shortness of breath was mentioned." [AR at 25.]  The record also reveals the following discussion between plaintiff's counsel and the ALJ:

> Atty:  And my final argument is 2.09 that he is not able to sustain speech.  He can produce speech, but he's unable to sustain it.  That --
>
> ALJ:   But that's not what the listing says.  It says inability, and he can produce speech so he doesn't meet that particular requirement.  He can produce it. He's just hoarse, and he has a soft voice.  I don't believe he meets the listing.
>
> Atty:  Your Honor, the listing, as written, it's or sustained so in this case, although the claimant is able to produce speech and can be understood, he's not able to sustain speech.  I believe he still will come under the listing of loss of speech.
>
> ALJ:   I appreciate your argument, but I don't believe he does, but thank you very much.

[AR at 38-39.]

The Court agrees with plaintiff's assertion that the ALJ applied an improper legal standard by requiring a "complete inability to speak" in evaluating whether plaintiff's speech impairment meets Listing 2.09.  [AR at 15-25, 38-39; JS at 3.]  Contrary to the ALJ's interpretation, Listing 2.09 may be met by individuals who are not completely unable to speak, but who instead have difficulties with speech communication, including an inability to sustain effective speech.  See 20 C.F.R., Part 404, Subpt. P, App. 1, § 2.09; SSR 82-57.  See also Meraz v. Barnhart, 300 F.Supp.2d 935, 941 (C.D. Cal. 2004) ("Listing 2.09 does not require 'absolute inability to produce speech.'  Rather, . . . Listing 2.09 may be met if a claimant's condition prevents *effective* speech.") (emphasis in original) (claimant who could not sustain speech for an extended period of time above a hoarse whisper entitled to a finding of disability under Listing 2.09); Leigh v. Shalala, 870 F.Supp. 921, 924 (S.D. Iowa 1994) (claimant with a severe speech impediment that affected fluency met Listing 2.09).  Effective speech includes the ability to sustain speech.  ("To speak effectively, an individual must be able to produce speech that can be heard, understood, *and sustained* well enough to permit useful communication in social and vocational settings." SSR 82-57 (emphasis added)).  Thus, to properly consider whether plaintiff's impairment met

1   Listing 2.09, the ALJ was required to evaluate the "functional efficiency" of plaintiff's speech,

2   including plaintiff's "ability to produce and sustain a serviceably fast rate of speech output over a

3   useful period of time." Id. Because the ALJ only analyzed whether plaintiff was able to speak at

4   all, she failed to properly consider whether plaintiff's speech limitations met Listing 2.09.  20

5   C.F.R., Part 404, Subpt. P, App. 1, § 2.09; SSR 82-57.  Remand is warranted on this issue.[4]

6

7   ## C.    PLAINTIFF'S CREDIBILITY

8        Plaintiff also contends that the ALJ did not properly evaluate his subjective complaints and

9   credibility. [JS at 11-12, 15.] Specifically, plaintiff asserts that the ALJ erred by rejecting plaintiff's

10  subjective symptoms based on the opinions of the consultative medical examiner and the medical

11  consultant while disregarding the treating physicians' contradictory opinions.

12       Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms,

13  including degree of pain and functional limitations, the ALJ must make explicit credibility findings.

14  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d

15  915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, she must make

16  specific findings rejecting it).  The ALJ can reject a claimant's allegations "only upon (1) finding

17  evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v.

18  Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide

19  clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms

20  when there is medical evidence of an underlying impairment).  The factors to be considered in

21  weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2)

22  inconsistencies either in the claimant's testimony or between the claimant's testimony and his

23  conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from

24

25

26      [4]  If the ALJ determines that a "refined assessment of [plaintiff's] speech proficiency is
    necessary" as described in SSR 82-57, she should arrange for plaintiff to receive a speech
27  proficiency assessment by an otolaryngologist or speech therapist.  The professional assessment
    should address the audibility, intelligibility, and functional efficiency of plaintiff's speech. See SSR
28  82-57.

1    physicians and third parties concerning the nature, severity, and effect of the symptoms of which

2    the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also

3    20 C.F.R. §§ 404.1529(c), 416.929(c).  "It is not sufficient for the ALJ to make only general

4    findings."  Dodrill, 12 F.3d at 918.  Absent evidence showing that a plaintiff is malingering, the ALJ

5    must clearly identify evidence in the record undermining the plaintiff's testimony to properly

6    discredit his alleged limitations.  See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

7    1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not

8    credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at

9    834).  If properly supported, the ALJ's credibility determination is entitled to "great deference."

10   See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

11        As the record contains no evidence of malingering by plaintiff,[5] the ALJ was required to

12   justify her credibility determination with clear and convincing reasons.  See Benton, 331 F.3d at

13   1040.  In the decision, despite finding that plaintiff's medical condition would reasonably produce

14   some of his alleged limitations, the ALJ found plaintiff's "statements concerning the intensity,

15   persistence and limiting effects" of his symptoms to be "not entirely credible."  [AR at 16.]  In

16   discrediting plaintiff's testimony, the ALJ relied on the medical evidence, which she found

17   contradicted the extent of plaintiff's alleged limitations.  [AR at 17.]  As discussed below, the Court

18   has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that

19   they are neither clear nor convincing.

20        In finding plaintiff's subjective limitations incredible, the ALJ asserted that the medical

21   evidence demonstrated that plaintiff "had the residual functional capacity to perform medium

22   exertional level work," and that he "lacks the ability to engage[] in prolonged speech or speak for

23   more than a few minutes at a time."  [AR at 17.]  In making this finding, the ALJ explicitly credited

24   the assessment of Dr. To that plaintiff "lacks any limitations in the abilities to lift/carry, push/pull,

25   sit, and stand/walk and lacks any postural, manipulative, visual, communicative, or environmental

26

27   _____

28        [5]   The ALJ made no finding that plaintiff was malingering, nor does the evidence suggest
     plaintiff was doing so.

1   limitations." [AR at 17, 144.]  The ALJ also credited Dr. Rubaum's finding that plaintiff could

2   "lift/carry 50 pounds occasionally and 25 pounds frequently, can stand/walk for six hours in an

3   eight-hour work day, can sit for six hours in an eight-hour workday, and lacks any postural,

4   manipulative, visual, communicative, or environmental limitations."  [AR at 17, 153-56.]

5   Additionally, in finding that the medical evidence did not support plaintiff's subjective limitations,

6   the ALJ rejected Dr. Mesrobian's assessment of plaintiff's symptoms.  [AR at 17.]

7         The ALJ failed to sufficiently explain how the evidence upon which she relied undermined

8   plaintiff's credibility.  For the ALJ to have properly rejected plaintiff's credibility, she was required

9   to provide "specific cogent reasons for [her] disbelief."  Rashad, 903 F.2d at 1231.  Here, the ALJ

10  did not specifically explain what parts of plaintiff's testimony were incredible and what evidence

11  in the record undermined plaintiff's complaints.  See Dodrill, 12 F.3d at 918.  The ALJ in fact

12  credited plaintiff's testimony that he is only able speak for a few minutes before becoming too

13  hoarse.  [AR at 17, 24-25, 28-30.]  Specifically, the ALJ found that "[r]egarding [plaintiff's] ability

14  to speak, the record shows that [plaintiff] lacks the ability to engage[] in prolonged speech or speak

15  for more than a few minutes at a time."  [AR at 17.]  In making this finding, the ALJ recognized that

16  plaintiff's testimony was consistent with the findings of Dr. To, "who stated that [plaintiff] speaks

17  softly and with some hoarseness," and Dr. Mesrobian, "who reported that [plaintiff] experiences

18  difficulty communicating because of hoarseness."  [AR at 17, 144, 149.]  The ALJ also found

19  plaintiff's statements concerning his speech limitations to be "consistent with the observations of

20  the undersigned [ALJ], who listened to [plaintiff's] oral testimony."  [AR at 17.]  Indeed, the record

21  demonstrates that the ALJ noticed plaintiff's speech problems during the hearing, as she

22  purposefully asked questions that would not require him "to give as much of a response to make

23  it a little bit easier for [him]."  [AR at 27.][6]

24  _____

25        [6]   To the extent that defendant argues that the ALJ also found plaintiff's speech limitations
     incredible based upon either plaintiff's words at the hearing or the manner in which he spoke those
26   words [JS at 6-7], this argument is not supported by the record. As explained herein, the ALJ in
     fact credited plaintiff's subjective speech limitations as being consistent with the findings of the
27   treating and examining physicians and the ALJ's observation of plaintiff's testimony. [AR at 17,
     27, 144, 149.] As such, the record does not demonstrate that the ALJ relied on plaintiff's ability
28   to testify as another reason to discredit plaintiff's alleged limitations.

All of these findings contradict the conclusion, which the ALJ interpreted from the analyses provided by Dr. To and Dr. Rubaum, that plaintiff lacked any communicative limitations.  [AR at 17, 144, 149, 153-56.]  First, contrary to the ALJ's interpretation of Dr. To's analysis, Dr. To did not conclude that plaintiff lacked any communicative limitations concerning his ability to speak. Rather, Dr. To reported that plaintiff's speech was both soft and hoarse.  [AR at 144.]  Secondly, Dr. Rubaum's assessment that plaintiff lacked any communicative limitations [AR at 156], is inconsistent with the medical records upon which his assessment is based.  Dr. Rubaum based his assessment solely on the records provided by Dr. To and Dr. Mesrobian, and Dr. Rubaum asserted that his findings were consistent with the findings provided in those records.  [AR at 150, 157.]  However, as the ALJ noted and the medical records demonstrate, both Dr. To's and Dr. Mesrobian's findings are consistent with plaintiff's testimony that his speech abilities are limited. [AR at 17, 24-25, 28-30, 144, 149.]  Therefore, the medical evidence does not support Dr. Rubaum's finding that plaintiff has no communicative limitations.  Since the ALJ actually credited much if not all of plaintiff's testimony concerning his limited ability to speak, and failed to provide any cogent reasons based on specific evidence for disbelieving plaintiff's subjective symptoms, the Court finds that the ALJ improperly discredited plaintiff's credibility.

**D.    TREATING PHYSICIAN'S OPINION**

Plaintiff asserts that the ALJ improperly rejected Dr. Mesrobian's assessment regarding plaintiff's symptoms and limitations.  [JS at 8-9, 12.]  In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830.  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273,1285 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

Where the treating physician's opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating physician if the ALJ provides specific and legitimate reasons for doing so that are based on substantial evidence in the record.  Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).  However, even if an examining physician's opinion constitutes substantial evidence, the treating physician's opinion is still entitled to deference.  Id.; SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[7]  The ALJ must provide specific, legitimate reasons for rejecting a treating physician's opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring that Social Security Administration "always give good reasons in [the] notice of determination or decision for the weight [given to the] treating source's opinion"); see also SSR 96-2p ("the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

Here, the ALJ provided several reasons for rejecting Dr. Mesrobian's medical opinions regarding plaintiff's limitations, all of which were insufficient.  First, the ALJ determined that Dr. Mesrobian's views regarding plaintiff's limitations were "of limited value" because Dr. Mesrobian only treated plaintiff on a "sporadic basis . . . from June 2005 to December 2007 and did not treat [plaintiff] at all during the ten-month time period from October 23, 2006 to September 12, 2007." [AR at 17, 126-36, 146-49, 176-81.]  The medical records do not support the ALJ's finding regarding the "sporadic" nature of Dr. Mesrobian's treatment.  In fact, the very records cited by the ALJ show that plaintiff met with Dr. Mesrobian a number of times between October 2006 and

---

[7]    "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  SSR 96-2p.  In determining what weight to accord the opinion of the treating physician, the ALJ is instructed to consider the following factors: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the degree to which the opinion is supported by relevant medical evidence; consistency of the opinion with the record as a whole; specialization; and any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

1   September 2007. [AR at 181.][8]  The ALJ also incorrectly stated the time frame during which Dr.

2   Mesrobian treated plaintiff.  Rather than treating plaintiff sporadically from June 2005 to December

3   2007, as the ALJ asserted in the opinion [AR at 17], Dr. Mesrobian started treating plaintiff in

4   September 2006, and continued to meet with him on a regular basis through January 2008. [AR

5   at 126, 147, 180-81.] Therefore, it was not wholly accurate for the ALJ to classify Dr. Mesrobian's

6   treatment as sporadic.  It is error for a an ALJ to ignore or misstate the competent evidence in the

7   record in order to justify her conclusion.  See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

8   1984).  When put into the proper context, the record shows that Dr. Mesrobian met with plaintiff

9   at least seven times from September 11, 2006, to January 7, 2008. [AR at 126, 147-49, 180-81.]

10  Since the ALJ misinterpreted the record regarding the regularity and length of time during which

11  Dr. Mesrobian treated plaintiff, her first reason for rejecting Dr. Mesrobian's findings was

12  inadequate.

13         The ALJ also discredited Dr. Mesrobian's assessment of plaintiff's limitations because she

14  determined that it was "accompanied by minimal supporting documents." [AR at 17.] An ALJ may

15  consider the degree to which a treating physician's opinion is supported by relevant medical

16  evidence, "particularly [by] medical signs and laboratory findings."  20 C.F.R. §§ 404.1527(d)(3);

17  416.927(d)(3).  However, it is insufficient for an ALJ to reject a treating physician's findings based

18  solely on the amount of supportive medical records.  Embrey v. Bowen, 849 F.2d 418, 421-23 (9th

19  Cir. 1988) (merely to state that a medical opinion is not supported by enough objective findings

20  "does not achieve the level of specificity our prior cases have required, even when the objective

21  factors are listed seriatim.").  Here, the ALJ implied that Dr. Mesrobian did not provide enough

22  documents reflecting his treatment of plaintiff's condition, noting that some of the documents

23  provided by Dr. Mesrobian were from Dr. Walid Bejani, a doctor that treated plaintiff in Lebanon.

24  [AR at 17.][9]   The record contains several pages of documents regarding Dr. Mesrobian's

25  _____

26  [8]   Dr. Mesobian's records show that he met with plaintiff on December 20, 2006, March 19, 2007, and June 12, 2007.  [AR at 181.]

27

28  [9]   The Court is not persuaded by the ALJ's insinuation that Dr. Mesrobian's findings were weakened by the fact that he was the "physician listed as the source" who submitted the medical

14

examinations of plaintiff. [AR at 126, 147-49, 178-81.] For example, in a letter dated October 23, 2006, Dr. Mesrobian noted plaintiff's partial laryngectomy and determined that plaintiff needed "regular follow-ups and serial radiologic studies to rule out the presence of any recurrence as these tumors could be very aggressive." [AR at 147.] He also noted that plaintiff's "inlet of the larynx was somewhat narrower" and that he "does get hoarse and loses his voice almost totally after few sentences." [Id.] Other medical records evidence Dr. Mesrobian's subsequent examinations during which he evaluated plaintiff's throat and speech problems. [AR at 180-81.] The ALJ failed to specifically explain why these records were insufficient to support Dr. Mesrobian's assessment of plaintiff's symptoms and limitations. The ALJ's focus on the quantity of medical records provided by Dr. Mesrobian was thus an insufficient reason to reject Dr. Mesrobian's findings. See Embrey, 849 F.2d at 421-23.

Thirdly, the ALJ asserted that Dr. Mesrobian "appears to have taken [plaintiff's] subjective allegations at face value and merely reiterated those allegations when making assertions regarding [plaintiff's] symptoms and functional capacity." [AR at 17.] The ALJ did not make any specific reference to the record regarding this finding, and for that reason alone, it was not a sufficiently specific or clear reason for disregarding Dr. Mesrobian's findings. See Lester, 81 F.3d at 830. Additionally, even if Dr. Mesrobian had taken plaintiff's subjective assertions at face value, that too would be an insufficient reason for rejecting his assessment of plaintiff's limitations. A doctor's disability analysis "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded if the claimant's own credibility is first properly discounted. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). However, as explained herein, the ALJ failed to provide clear and

---

records regarding plaintiff's medical treatment in Lebanon. [AR at 17, 127-36.] Rather, Dr. Mesrobian's course of treatment was related to plaintiff's prior laryngectomy for spindle cell carcinoma of the vocal cord. [AR at 147.] Since plaintiff's prior surgery, radiation, and chemotherapy factored into his patient's existing condition, it is sensible that Dr. Mesrobian would incorporate such records into his own medical files.

1  convincing reasons for discounting plaintiff's alleged limitations.  As such, the ALJ's third reason

2  for rejecting Dr. Mesrobian's assessment was equally inadequate.[10]

3          Finally, the ALJ asserted that Dr. Mesrobian did "not provide[] an assessment of [plaintiff's]

4  residual functional capacity which is compatible with the record as a whole."  [AR at 17.]  The

5  Court is not persuaded that the ALJ actually considered "the record as a whole" in making this

6  finding, since as discussed herein, she made selective and conclusory references to the record

7  in rejecting Dr. Mesrobian's assessment.  An ALJ is obligated to consider all of the relevant

8  evidence and may not point to only those portions of the evidence that bolster her findings.  See

9  Gallant, 753 F.2d at 1456.  Here, not only did the ALJ misinterpret the records regarding the

10 regularity and time frame during which Dr. Mesrobian treated plaintiff, the ALJ also failed to

11 reference other parts of plaintiff's medical records that pertain to his alleged limitations.  The ALJ

12 did not discuss the medical evidence submitted by Dr. Hakimian, plaintiff's second treating

13 physician, even though that evidence corroborated plaintiff's assertion that he suffered from

14 insomnia and chronic fatigue and was taking a prescription sleep aid.  [AR at 170, 183-86.]

15 Similarly, the ALJ did not substantively discuss the information provided in the medical records

16 pertaining to plaintiff's treatment while in Lebanon, even though his surgery and subsequent

17 radiation and chemotherapy are what allegedly caused his limitations.[11]  [AR at 127-36.]  Since

18 _____

19      [10]   To the extent that the ALJ was not satisfied by Dr. Mesrobian's clinical records as lacking
   independent laboratory findings, this too is an inadequate reason for rejecting Dr. Mesrobian's
20 findings.  See Hartman v. Bowen, 636 F.Supp. 129, 132 (N.D. Cal. 1986); Day v. Weinberger, 522
   F.2d 1154, 1156 (9th Cir. 1975) ("[d]isability may be proved by medically-acceptable clinical
21 diagnoses, as well as by objective laboratory findings."); Montijo v. Secretary of Health and Human
   Services, 729 F.2d 599, 601 (9th Cir. 1984) (while objective diagnoses and observations are the
22 most important parts of the physicians' reports, the ALJ's reliance on the inability of the physicians
   to support their findings with objective laboratory findings does not constitute a legally sufficient
23 reason for rejecting their conclusions) (citing Day, 522 F.2d at 1156-57).  Here, the medical
   evidence demonstrates that Dr. Mesrobian treated plaintiff's condition and limitations based upon
24 his medically-acceptable clinical diagnoses, and the ALJ's analysis fails to properly refute that
   demonstration.  See Day, 522 F.2d at 1156.
25

26      [11]   The Court notes that most of the medical records regarding plaintiff's treatment received
27 in Lebanon are in French.  If the ALJ did not address these records because she did not
   understand them, that too was legal error.  If there are ambiguities or inadequacies in the record
28 concerning medical treatment or diagnoses that may affect the determination of disability, the ALJ

16

1   the ALJ misinterpreted and failed to address relevant parts of the medical evidence pertaining to

2   plaintiff's treatment, she did not sufficiently show that Dr. Mesrobian's assessment was

3   incompatible with the record.

4          The ALJ's reliance on the findings of Dr. To and Dr. Rubaum, without properly considering

5   the opinion of Dr. Mesrobian, was insufficient to find plaintiff's alleged limitations incredible.  See

6   Lester, 81 F.3d at 830-31 (the opinion of an examining doctor, even if contradicted by another

7   doctor, can only be rejected for specific and legitimate reasons that are supported by substantial

8   evidence in the record); see also Nguyen v. Chater, 100 F.3d 1463,1464 (9th Cir. 1993) (ALJ erred

9   in failing to explicitly reject an opinion and set forth specific, legitimate reasons for crediting

10  another opinion).  "While an ALJ may certainly find testimony not credible and disregard it . . .,

11  [courts] cannot affirm such a determination unless it is supported by specific findings and

12  reasoning."  Robbins v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006).

13  Here, the ALJ erred by failing to provide clear and convincing reasons for finding that the medical

14  record did not support plaintiff's subjective testimony.  Remand is warranted on this issue.

15

16                                            **VI.**

17                          **REMAND FOR FURTHER PROCEEDINGS**

18          As a general rule, remand is warranted where additional administrative proceedings could

19  remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

20  _____

21  has a duty to further develop the record.  See Tonapetyan, 242 F.3d at 1150 ("Ambiguous
    evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of
22  the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80
    F.3d at 1288).  When medical records are inadequate to determine whether a claimant is disabled,
23  the ALJ must recontact the medical source, including the treating physician if necessary, to clarify
    the ambiguity or to obtain additional information pertaining to the claimant's medical condition.
24  See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification
    from your medical source when the report from your medical source contains a conflict or
25  ambiguity that must be resolved, the report does not contain all the necessary information, or does
    not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").
26  The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the
    claimant's burden.  See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).  As such, on
27  remand, to the extent plaintiff's Lebanese records are not clear to the ALJ, she is instructed to
28  seek translation of plaintiff's medical records pertaining to his treatment while in Lebanon.

                                              17

Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order to properly consider: (1) whether plaintiff's speech impairment meets Listing 2.09; and (2) plaintiff's credibility concerning his limitations, especially in light of Dr. Mesrobian's findings.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 30, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE